**Angel Manuel GARCIA, Jr., Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 1078S241.

Supreme Court of Indiana.

July 12, 1979.

Harriette Bailey Conn, Public Defender, Robert J. Fink, Sp. Asst. Public Defender, Indianapolis, for appellant (defendant below).

Theodore L. Sendak, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee (plaintiff below).

HUNTER, Justice.

The petitioner is before this Court appealing from the denial of his petition for relief under Post-Conviction Relief, Rule 1. The petitioner had previously entered a guilty plea to murder in the second degree and was sentenced to a term of fifteen to twenty-five years. His petition now raises the following issues:

1. Whether the plea of guilty was knowingly, intelligently and voluntarily entered by petitioner who spoke only Spanish; and

2. Whether the trial court made a true and complete transcript of the guilty plea proceedings in accordance with Ind.R. Crim.P. 10.

The facts from the record show that the petitioner came from Puerto Rico and spoke only Spanish. He had been in the United States about three months when he spent the early part of one evening drinking with his uncle. He left his uncle's house briefly; then returned and stabbed him to death. At the guilty plea hearing, an interpreter, Mr. L. Daniel Ferrer, was appointed by the court to translate all the court's questions into Spanish and the petitioner's answers into English. The court noted that the court reporter did not have the equipment or the knowledge of Spanish necessary to take down any of the Spanish translation. Therefore, the record of the proceeding showed only the English words. The court allowed the petitioner's pastor, who spoke Spanish very well, to be present during the entire proceeding.

I.

The petitioner first contends that his guilty plea was not voluntary because of the difficulty and confusion in translating from English to Spanish and then back to English. He argues that the confusion in translation was more serious in his case because the interpreter spoke Spanish with a Mexican dialect instead of a Puerto Rican dialect. He also claims the confusion is more severe in his case since he is a person of subnormal intelligence. This last claim, however, is unsubstantiated in the record, so we do not consider it further.

In considering the voluntariness of a guilty plea we start with the standard that the record of the guilty plea proceeding must demonstrate that a defendant was advised of his constitutional rights and knowingly and voluntarily waived them. *Boykin v. Alabama,* (1969) 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. Our Court has consistently held that the record must provide a sufficient basis for the conclusion that defendant was meaningfully informed of the specific rights enumerated in *Boykin. Laird v. State,* (1979) Ind., 385 N.E.2d 452; *Williams v. State,* (1975) 263 Ind. 165, 325 N.E.2d 827.

We then turn to the facts of the instant case to determine whether the record shows a voluntary, knowing, and intelligent plea. Here, the record clearly demonstrates that the judge did carefully advise the petitioner of his constitutional rights as enumerated in *Boykin* and did adequately establish the factual basis of the crime before he accepted the guilty plea. However, there is nothing in the record to show the exact Spanish words used by the interpreter when he translated each of the judge's statements or the Spanish answers given by the petitioner. The record shows the petitioner's responses as given in English by the interpreter. The response was usually the statement, "He understands, your Honor," but sometimes a yes or a no response was given.

At one point the judge was not satisfied with the statement, "He understands," and

told the interpreter he needed a specific statement of the plea petitioner was entering. The interpreter then gave the response, "He says, 'I am guilty of Murder in the Second Degree, your Honor.'" There was some discussion at the sentencing hearing, when a different interpreter was used, about whether the petitioner understood what sentence he was receiving. The petitioner thought he had been promised six years and not fifteen to twenty-five. This confusion was subsequently explained as arising from discussions the petitioner had with his attorney in which he had asked about the effect good behavior would have on his sentence and how much time he would actually serve if he were a model prisoner.

The facts from the above which tend to support petitioner's contention that the guilty plea was not knowingly and voluntarily given are the absence of any of the Spanish words from the record, the general nature of most of petitioner's responses as given by the interpreter, and the confusion over the length of the sentence.

There is other evidence from the record, however, which supports the trial judge's determination that the guilty plea was voluntarily given. First, the interpreter was experienced and testified that he had appeared in court as an interpreter on several occasions before the petitioner's case. He had also worked with the petitioner and his attorney during interviews in prison and testified that he had no difficulty communicating with the petitioner at those times. The court had admonished him to translate, verbatim, everything that went on in the court. The court accepted the general answer "He understands, your Honor" for most of the questions, but he did stop and require more specific answers at several important points. One time the court asked, "Mr. Garcia, did you kill Pedro Colon?" The answer, through the interpreter was, "Yes, sir, he did." At another point, the judge specifically asked whether any threats or promises had been made other than the fifteen to twenty-five year sentence. The response, through the interpreter, was, "No, sir, your Honor."

Most significant, to us, is the fact that the court allowed petitioner's pastor, who spoke Spanish very well, to be present during the entire guilty plea proceeding. At the end of the proceeding, before he accepted the guilty plea, the judge questioned the pastor and asked him if he felt the translation had been accurate and correct. The pastor responded that the wording was a little mixed up because of the difference between Mexican and Puerto Rican dialects. However, he said he had asked petitioner if he understood everything and the petitioner responded that he did. The petitioner also told the pastor that he did kill Colon but he didn't do it intentionally because he was intoxicated at the time.

■■ In post-conviction proceedings the burden of proof rests with the petitioner to establish his grounds to relief by a preponderance of the evidence. Ind.R.P.C. 1 § 5; *Laird v. State*, (1979) Ind., 385 N.E.2d 452; *Davis v. State*, (1975) 263 Ind. 327, 330 N.E.2d 738. The judge hearing the petition is the sole judge of the weight of the evidence and the credibility of the witnesses. *Carroll v. State*, (1976) 265 Ind. 423, 355 N.E.2d 408. His decision will be reversed only where the evidence is without conflict and leads unerringly to a result not reached by the trial court. *Laird, supra; Cottingham v. State*, (1978) Ind., 379 N.E.2d 984.

■ Although we do not have a record of any of the actual Spanish words used, we do find sufficient evidence from the facts enumerated above as contained in the record of the guilty plea proceeding to uphold the trial judge's determination that the guilty plea was knowingly and voluntarily given.

## II.

The petitioner further contends that the trial judge did not make a true and complete transcript of the entire guilty plea proceeding as required by Ind.R.Crim.P. 10. The post-conviction proceedings were held in two parts and a special judge was assigned to hear this second issue. The interpreter, Mr. Ferrer, was present at this hear-

ing and the special judge read one paragraph to him from the transcript of the guilty plea proceeding. The paragraph contained the advisement of the petitioner's constitutional right to a jury trial. Mr. Ferrer testified that he could not translate the paragraph, as read, since it was so long he could not even remember it all in English. He then testified that the normal procedure he used was for him to signal the trial judge at various parts of a lengthy paragraph so he could translate that part of it without acknowledging any answer on the part of defendant until the entire paragraph was translated.

■ The petitioner appears to contend that since the transcript of the guilty plea proceeding does not show the places where the trial judge stopped to allow a partial translation, it is not a true and complete record. While we feel that it would be better practice for the trial court to insure that the transcript showed each time he stopped speaking to allow a translation to be made, we do not feel the instant transcript is necessarily incomplete. Our Rules of Criminal Procedure do not specifically address the situation of proceedings during which a foreign language is used. Since it was apparently impossible for the court reporter to take down any Spanish words, since the record is complete as to all the English words that were spoken, and shows a complete record of the advisement of rights and the factual basis of the plea, and since the judge also asked a second interpreter to discuss the proceedings with the petitioner and ascertain whether or not he understood everything, we find the record to be complete within the meaning of our rules.

For all the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.