Edward RICHARDSON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 583S173.

Supreme Court of Indiana.

April 17, 1985.

Peter J. Visclosky, John R. Pera, Greco, Gouveia, Miller, Pera & Bishop, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a trial by jury Defendant (Appellant) was convicted of murder, Ind. Code § 35–42–1–1(1) (Burns 1979), and murder while committing robbery (felony murder), IC 35–42–1–1(2) (Burns 1979). The trial court properly merged the murder conviction into the felony murder conviction, and sentenced Defendant to an enhanced term of 50 years imprisonment. This direct appeal raises four (4) issues for our review, which we have renumbered and restated as follows:

(1) Whether the trial court erred in admitting Defendant's confession into evidence;

(2) Whether the trial court erred in admitting certain photographs of the victim into evidence;

(3) Whether Defendant was provided with effective assistance of counsel;

(4) Whether the evidence was sufficient to sustain the conviction.

The evidence at trial revealed that during early November, 1981 Defendant and another began to plot the robbery of an elderly man. About 8:30 p.m., November 22, Defendant and his accomplice approached the victim's home in Hammond, told him they were having automobile trouble and asked to use his telephone. The victim previously had been acquainted with Defendant. Once inside, they beat and tried to choke the victim and left him unconscious. They ransacked the house, taking about $3,000.00 and other items. As they were leaving, Defendant or his companion cut the victim with a knife and thereby killed him.

Defendant, his accomplice, his accomplice's sister, Crystal Mullens, and another woman, Lisa Ingraham, eventually fled to Texas. However, prior to departing, Defendant told relatives and other persons about the incident and of his role in the robbery. After a warrant was issued, Defendant and his accomplice were arrested in Texas. Defendant waived extradition and gave a confession to two Hammond police officers before they returned him to Indiana.

## ISSUE I

Defendant challenges the trial court's admission of his confession into evidence, claiming that he did not knowingly and voluntarily waive his rights not to incriminate himself and to have an attorney present during interrogation. *See generally, Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Before a confession may be admitted into evidence the State must establish beyond a reasonable doubt that the suspect intelligently and knowingly waived his rights not to incriminate himself and to have an attorney present. *See, Chamness v. State,* (1982)

Ind., 431 N.E.2d 474, 476; *Ortiz v. State,* (1976) 265 Ind. 549, 553, 356 N.E.2d 1188, 1191 and authorities cited. However, this Court will not reweigh the evidence in evaluating a trial court's decision to admit a confession, but will only determine whether the record includes sufficient evidence to sustain the trial court's ruling. *Id.,* 265 Ind. at 553, 356 N.E.2d at 1191.

■ In this case Defendant contends that he was in a confused mental state when he was arrested in Texas, that the conditions at the jail there caused further emotional stress, and that he was hysterical throughout the meeting with the officers. Defendant emphasizes that he had been under psychiatric care periodically since 1973, and argues that the problems which led to this treatment diminished his capacity for knowing and intelligent conduct effecting a waiver of his constitutional rights. However, the officers who took the statement testified that Defendant initially said that he was willing to make a statement when they saw him briefly at the extradition hearing, and that at the start of the meeting Defendant told the officers he understood his rights because of his prior experiences in the juvenile justice system. The officers testified that they read Defendant the *Miranda* warnings at least twice and that he signed a written waiver before the statement was taken. They further testified that Defendant was very calm and cooperative throughout the meeting, until he started to break down as they finished, and one of the officers testified that they used no threats or force to obtain the statement. Under these circumstances, the trial court was warranted in finding that the confession was the product of Defendant's free will and intelligent deliberation rather than, as claimed by him, by an overpowering of his will wrought by coercive influences playing upon his emotional instability.

## ISSUE II

Defendant contends that the trial court committed reversible error by admitting certain photographs depicting how the victim appeared when police arrived at the scene of the crime and as he appeared immediately prior to the autopsy. We do not agree.

■ Such photographs are admissible if they provide relevant evidence and their relevance is not outweighed by their tendency to inflame and impassion the jury against the defendant. The question necessarily becomes one of balancing these concerns, and thus the trial court has broad discretion in determining whether such photographs should be admitted in a particular case. *See, Webster v. State,* (1981) Ind., 426 N.E.2d 1295, 1297–98; *see also Akins v. State,* (1981) Ind., 429 N.E.2d 232, 236.

■ Defendant contends that the State was allowed to introduce a repetitive series of inflammatory photographs which prejudiced the jury against him. As in *Akins, supra,* the photographs admitted here are "unpleasant to view as they depict the nature and extent of wounds of the decedent." *Id.,* 429 N.E.2d at 236. Nevertheless, they demonstrate not only that the victim died of a knife wound, corroborating Defendant's confession and other testimony but also depict the condition of the house and thereby support the inference that the victim was killed during a robbery, as charged by the second count of the information. Moreover, the record reveals that the State agreed to withdraw several photographs that it had submitted originally, and the trial court, in an appropriate exercise of its discretion, excluded several that it determined would be unduly repetitive or prejudicial. We cannot conclude that the trial court abused its discretion by admitting photographs in this case.

## ISSUE III

Defendant contends that he is entitled to a new trial because he did not receive minimally adequate representation by counsel, as required by the Sixth Amendment to the United States Constitution and Article I, § 13 of our State Constitution. However, this record demonstrates that he received

diligent and competent assistance from his trial counsel.

 We review claims of ineffective assistance of counsel under the two-step test articulated by the United States Supreme Court in *Strickland v. Washington*, (1984) —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674, and integrated into Indiana caselaw beginning with *Lawrence v. State*, (1984) Ind. 464 N.E.2d 1291, 1294-97. *See also, e.g. Garren v. State*, (1984) Ind., 470 N.E.2d 719, 724; *Vickers v. State*, (1984) Ind., 466 N.E.2d 3, 7-8; *Kruckeberg v. State*, (1984), Ind., 465 N.E.2d 1126, 1128-30. Under the first step, or "performance component," the defendant must demonstrate that the alleged acts or omissions by counsel fell outside the wide range of competent professional assistance. A strong presumption exists that counsel rendered adequate legal assistance. If the defendant satisfies step one of the test, he then must establish the second step, or "prejudice component," under which the defendant will be entitled to relief only if the reviewing court determines that counsel's errors had an adverse effect upon the judgment. *Strickland, supra,* —— U.S. at ——, 104 S.Ct. at 2066-70, 80 L.Ed.2d at 696-700; *Lawrence, supra,* 464 N.E.2d at 1294.

The *Strickland* court emphasized that "there is no reason for a court deciding an ineffective assistance claim to ... address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland, supra,* —— U.S. at ——, 104 S.Ct. at 2069, 80 L.Ed.2d at 699; *Kruckeberg, supra,* 465 N.E.2d at 1129. In this case Defendant has not demonstrated that counsel's performance was outside the range of competent assistance.

 Defendant cites several specific instances to support his position. First, he attacks trial counsel's decision, at the hearing to suppress the confession, not to call an officer who had been working at the Lake County Jail at the time Defendant was returned from Texas and incarcerated there the day after giving his confession. The officer testified during the hearing on Defendant's belated motion to correct errors, which raised the ineffective counsel issue, that when Defendant was admitted to the jail he was weeping, frightened and generally irrational. Defendant claims that, had this testimony been presented in support of the motion to suppress, it it would have established that he could not have been "rational" when he gave the confession, the day before the officer observed such behavior. However, trial counsel testified at the hearing upon the motion to correct errors, that Defendant had also told the officer about his involvement in the crime. Counsel stated that he did consider calling the officer but decided against it out of concern that the State would discover Defendant's inculpatory statement during cross-examination of him. Thus counsel's decision not to call the officer during the suppression hearing was a tactical determination.

Next, Defendant claims that counsel should have called his psychologist as a witness at the suppression hearing. She had been treating Defendant prior to the time the crime was committed and had visited him approximately two weeks after his return from Texas. At the hearing on the motion to correct errors, she stated that, had she been called, she would have testified that, in her opinion, Defendant was not capable of waiving his rights, at the time he gave the confession. However, she had not seen Defendant for at least several weeks preceding the giving of the confession. Moreover, Defendant had also told her about his involvement in the crime, and trial counsel testified that he had considered calling her at the suppression hearing but concluded that presenting such testimony from her would waive the psychologist-patient privilege and result in a disclosure of Defendant's inculpatory statement. Counsel also testified that he had determined that her testimony would have little probative value, inasmuch as she had not seen Defendant immediately before or after he gave his confession. Thus counsel's decision not to call this witness had been a tactical determination, and may not be categorized as ineffective assistance.

■ Defendant similarly attacks trial counsel's decision not to attempt to introduce into evidence, for purposes of impeachment, a letter that he, allegedly, had received from Lisa Ingraham, who had been a witness for the State. The document was typewritten, undated and unsigned. It was a vehement and profane attack upon Defendant's character and accused him of having killed a man and giving testimony that involved another. We see no basis for the admission of the letter into evidence and no impeaching potential if it were admitted, hence the document has no relevance to either step of the *Strickland* test for ineffective representation.

■ Defendant also attacks trial counsel's alleged failure to impeach the testimony of Crystal Mullens, who was his girlfriend and sister of his accomplice. In a pretrial statement, Mullens had stated that her brother had said that he, not Defendant, had killed the victim. But at trial she testified that Defendant had taken the responsibility for the victim's death. Mullens testified at trial that she originally had implicated her brother because she feared Defendant, who she claimed had beaten her so severely in the past that she had required hospitalization. In the hearing on the motion to correct errors, Defendant's appellate counsel established hospital records show no admission of Mullens for treatment occasioned by a beating by Defendant. Defendant claims that trial counsel should have impeached Mullens with these records. However, the trial record reveals that trial counsel did effectively cross-examine Mullens concerning the inconsistencies in her statements. Regarding her allegations of physical abuse by Defendant, counsel incisively cross-examined her as to why she had remained with Defendant and fled to Texas with him if she feared him. Assuming such records would have been admissible for impeachment, which appears unlikely, in view of the collateral nature of the testimony to which they were relevant, we, nevertheless, see no inference of incompetence to be drawn from counsel's decision not to seek the records, given the other evidence of her lack of credibility and the fact that the content of such records was then unknown.

■ Finally, Defendant raises a generalized attack arguing that trial counsel had been in practice less than one year, and contends that counsel did not spend sufficient time consulting with him. The record, however, demonstrates that counsel consulted with Defendant on at least eight occasions, reviewed with him the strategy for both the motion to suppress and trial, pursued discovery, deposed State's witnesses and was very familiar with the facts and issues involved. Although this was counsel's first jury trial he consulted with several experienced attorneys as he prepared, and the trial transcript reveals that he conducted aggressive cross-examination of witnesses and raised many pertinent objections. Defendant has not demonstrated that counsel's performance was outside the range of competent professional assistance.

## ISSUE IV

■ Finally, Defendant argues that the evidence presented at trial was not sufficient to sustain the verdict. We note at the outset our standard of review upon a claim of insufficient evidence:

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." (citations omitted).

*Loyd v. State,* (1980) 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Defendant argues that the conflicting pretrial and trial statements by the State's witnesses provided evidence that was insufficient to demonstrate that Defendant, rather than his accomplice, killed the victim. This argument is misplaced because the trial judge merged his murder convic-

tion into the conviction for felony murder, i.e. murder during robbery.

I.C. 35–41–2–4 (Burns 1979), our accomplice liability statute, provides that one who knowingly or intentionally aids, induces or causes another to commit an offense also is liable for the offense. Applying this statute, this Court has ruled that a defendant may be convicted of felony murder even though it was his accomplice who killed the victim. *Jackson v. State*, (1983) Ind., 446 N.E.2d 344, 346. We have also stated that the State, in attempting to prove a felony murder charge, need only establish that the defendant intended to commit the underlying felony, and is not required to establish the intent to kill the victim. *Head v. State*, (1982) Ind., 443 N.E.2d 44, 50. Thus, the evidence will sustain a conviction for felony murder for a homicide committed in the course of committing a robbery, if the robbery and killing "were so closely connected in point of time, place and continuity as to be one continuous transaction." *Stroud v. State*, (1979) 272 Ind. 12, 14, 395 N.E.2d 770, 771 *quoting Bizup v. People*, (1962) 150 Colo. 214, 218, 371 P.2d 786, 788.

In this case the State presented substantial evidence that Defendant and his accomplice plotted the robbery of the victim, attacked him and did rob him after he allowed them into his home. It also established that one of them killed their victim as they were departing. This evidence was sufficient to sustain Defendant's conviction for felony murder.

We find no reversible error. The judgment is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.