**Thomas N. SCHIRO, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1084S423.**

Supreme Court of Indiana.

June 28, 1985.

Rehearing Denied Sept. 4, 1985.

Susan K. Carpenter, Public Defender, Frances Watson Hardy, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted by a jury of Murder While Committing or Attempting to Commit Rape. The trial court sentenced appellant to death. The conviction and death sentence were affirmed by this Court on direct appeal. *Schiro v. State* (1983), Ind., 451 N.E.2d 1047 (DeBruler, J., and Prentice, J., dissenting as to sentence), *cert. denied*, —— U.S. ——, 104 S.Ct. 510, 78 L.Ed.2d 699. Appellant's Petition for Post-Conviction Relief was denied. He now appeals.

The facts of this case were set out at length in the opinion on direct appeal. *Schiro, supra* at 1049–50. They will not be repeated here.

Appellant raises two issues in this appeal: whether the post-conviction court erred in finding the death penalty was proper in light of his allegations that the trial judge was biased and improperly considered appellant's behavior during the course of the trial in his sentencing determination; and whether the post-conviction court erred in finding appellant was not denied effective assistance of counsel.

In reviewing the denial of a post-conviction petition, this Court does not weigh evidence nor judge the credibility of witnesses. *Owens v. State* (1984), Ind., 464 N.E.2d 1277. The petitioner must satisfy this Court that the evidence as a whole leads unmistakably to a decision in his favor. *Bean v. State* (1984), Ind., 467 N.E.2d 671.

Appellant's first issue is divided into four subissues. In the first three subissues, which address the trial court's consideration of his behavior during the trial, appellant alleges: 1) that the information could not be relied upon because it was not introduced into evidence; 2) that because he did not testify, reliance on observations of his behavior violated his Fifth Amendment rights; and 3) that he was denied his right to effective assistance of counsel because defense counsel was not afforded an opportunity to comment on facts influencing the sentencing decision. The fourth subissue

concerns a comment made by the trial judge which appellant argues demonstrates the judge was biased and therefore unable to objectively render the sentencing determination.

Upon review of appellant's direct appeal, this Court found the trial court's original findings pertaining to the sentencing did not set out clearly and properly the court's reasons for imposing the death penalty. *Schiro, supra* at 1056. We ordered the court to make written findings setting out the aggravating circumstance proved beyond a reasonable doubt and the mitigating circumstances, if any, as specified in Ind. Code § 35–50–2–9. *Id.* In its *nunc pro tunc* entry the court found that the aggravating circumstance set out in Ind.Code § 35–50–2–9(b)(1) was proved beyond a reasonable doubt.

The court then stated that it found no mitigating circumstances, and addressed each of the possible mitigating circumstances delineated in Ind.Code § 35–50–2–9. In reference to the statutory mitigating circumstances concerning a defendant's mental or emotional condition, subsection (c)(2), and impairment of a defendant's capacity to appreciate the criminality of his conduct, subsection (c)(6), the court made the following finding:

> "This Court personally observed the Defendant, while the jury was present, making continual rocking motions, which did not stop throughout the trial except when the jury left the Courtroom. In the Court's outer chambers, out of the presence of the jury, in the eight days of trial, the Court frequently observed the Defendant sitting calmly and not rocking. It is apparent to the Court that this may well have influenced and misled the jury in its recommendation."

Appellant contends this finding constitutes the court's primary basis for sentencing him to death after the jury had recommended the death penalty not be imposed. He argues that "obviously" the court based its death penalty judgment on its observations, representing an "absolute denial of due process."

■ We cannot agree with appellant's conclusory assertion that the court based its judgment on observations of his behavior. The court, as prescribed by the death penalty statute, found the existence of an aggravating circumstance proved beyond a reasonable doubt. *Schiro, supra* at 1058. It addressed each of the possible mitigating circumstances delineated in the statute. Regarding appellant's mental state, the court made additional findings which cited testimony by psychiatric experts and evidence of appellant's attempt to conceal his crime. *Id.* at 1059. While the court's observations were certainly germane to its consideration of the jury's recommendation, it cannot be said its finding that appellant may have misled the jury constituted the basis for imposition of the death penalty.

■ Neither can we agree with appellant's contention that consideration of his behavior was impermissible because it was information not admitted into evidence. It is axiomatic that a trial court, within its discretion, can consider a defendant's behavior in the courtroom, regardless of whether the jury is present. The court can properly consider such "non-evidentiary" information as the pre-sentence investigation report and its perception of a defendant's remorse or lack thereof. We find no authority to support the conclusion appellant would have us draw, that a judge in a capital case is precluded from considering a defendant's behavior during the course of the trial if evidence of such behavior is not admitted into evidence.

Appellant nevertheless argues that under *Gardner v. Florida* (1977), 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393, the death penalty is invalid. In that case a Florida jury recommended a life sentence. The trial judge, as in the instant case, overrode the jury's recommendation and sentenced the defendant to death. In imposing the death penalty the judge stated that his decision was based in part on a presentence report which contained a confidential portion not available to the defense.

*Id.* at 353, 97 S.Ct. at 1202, 51 L.Ed.2d at 398–99.

The United States Supreme Court vacated the death sentence. The Court concluded the petitioner was denied due process because the death sentence was imposed, at least in part, on the basis of information which the petitioner had no opportunity to deny or explain. *Id.* at 362, 97 S.Ct. at 1207, 51 L.Ed.2d at 404. The Court found that because the confidential portion of the report was not part of the record on appeal, the Florida Supreme Court was unable to consider "the total record" in its review. *Id.* at 361, 97 S.Ct. at 1206, 51 L.Ed.2d at 404.

■ The instant case is distinguishable. At the sentencing hearing the judge expressly stated his observations of appellant's behavior and its relevance to the sentencing determination. Appellant thus had an opportunity to challenge the observations, and the judge's conclusion based thereon, either contemporaneously or upon filing his motion to correct error. Further, this Court explicitly considered the controverted finding on review of appellant's direct appeal. *Schiro, supra* at 1057, 1059.

We also note that testimony was introduced at trial by both sides in reference to appellant's prior rocking behavior. Appellant introduced testimony that he rocked in the presence of witnesses. Despite appellant's contention of lack of notice of the court's conclusion based on such behavior, defense counsel, who was certainly aware of the continual rocking motions referred to by the court, could have presented additional evidence at the sentencing hearing pertaining to the statutory mitigating circumstances. *See* Ind.Code § 35–50–2–9(d). The due process violation found in *Gardner, supra* is not present here.

Appellant contends that because under the Fifth Amendment of the United States Constitution and Art. 1, § 14 of the Indiana Constitution the general trial demeanor and manner of a defendant who does not take the stand cannot be considered against him and no inference can be drawn from his failure to testify, the trial court's consideration of his behavior violates his right against self-incrimination.

■ This argument is without merit. The sole case cited by appellant, *People v. Ramirez* (1983), 98 Ill.2d 439, 75 Ill.Dec. 241, 457 N.E.2d 31, is inapposite to the circumstances of the instant case. In *Ramirez* the State's attorney commented to the sentencing jury that the defendant had "sat silent" and offered no explanation for the crime. The Supreme Court of Illinois' decision to vacate the death sentence was based on the prosecutor's comment and the trial judge's refusal to properly instruct the jury not to consider the defendant's decision not to testify at the sentencing hearing. *Id.* at 472–73, 457 N.E.2d at 47.

Although the impermissible comment in *Ramirez* was couched in terms of the defendant's "conduct", the crux of the constitutional violation was the impropriety of commenting on the defendant's decision not to testify. Here, the trial judge's observations were directed to two of the possible mitigating factors and to the jury's recommendation, not to appellant's exercising of his constitutional rights. The record does not reveal any comment by the prosecution or by the court made in reference to appellant's decision not to testify at the sentencing hearing.

In an argument related to his contention that the trial court erred in considering non-evidentiary information, appellant asserts he was denied his Sixth Amendment right to effective representation upon the sentence being based on information which he had no opportunity to deny or explain.

■ This argument is also without merit. At the sentencing hearing the trial judge specifically stated his observations and their relevance to the sentencing determination. Counsel thus had the opportunity to contemporaneously object to or rebut the judge's observations. As the finding was stated explicitly and openly, we cannot conclude that the court's reference to its observations of appellant's demeanor precluded defense counsel from commenting on facts influencing the sentencing deci-

sion. *See Gardner, supra,* 430 U.S. at 360, 97 S.Ct. at 1206, 51 L.Ed.2d at 403.

In his fourth subissue appellant alleges the trial judge was biased. This allegation is premised on a comment made by the judge to a newspaper reporter which appellant argues supports the conclusion the judge had predetermined that the death penalty would be imposed.

The newspaper reporter, Jocelyn Winnecke of the *Evansville Sunday Courier and Press,* testified at the post-conviction hearing that the judge, The Honorable Samuel R. Rosen, remarked to her after the guilty verdict was returned that "we're going to fry the boy." Judge Rosen testified that before entering the courtroom to receive the guilty verdict he said "soon we'll know whether he'll live or die." Judge Rosen also testified that he would never use the word "fry" in that context and that he did not make up his mind until the date of sentencing whether the death penalty would be imposed. Vanderburgh County Deputy Prosecutor Jerry Atkinson, who prosecuted the case, was privy to the conversation between Winnecke and Judge Rosen. His recollection at the hearing was that Judge Rosen stated "I think the boy is going to die."

■ Appellant argues that the judge's statement, coupled with the judge's reliance on his personal observations, conclusively reflects bias and a predetermination of the death sentence. As stated *infra,* the observations were properly relied upon by the judge and in no way represent a loss of objectivity. The comment made by Judge Rosen, in the emotionally charged atmosphere preceding the return of the verdict, is insufficient evidence from which to conclude the judge was so biased as to make the sentencing determination arbitrary or capricious. The post-conviction court did not err in finding it was not improper for the trial judge to consider appellant's behavior and that the death sentence did not result from a loss of objectivity on the part of the judge.

Appellant also alleges he was denied his Sixth Amendment right to effective assistance of counsel because his trial counsel failed to assure that the jury received all the necessary verdict forms.

■■■ In addressing the issue of competency of counsel, this Court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Bailey v. State* (1985), Ind., 472 N.E.2d 1260; *Elliott v. State* (1984), Ind., 465 N.E.2d 707. We apply a two-step test comprised of a "performance component" and a "prejudice component". Under the first step, a defendant must show counsel's alleged acts or omissions fell outside the wide range of reasonable professional assistance. If the defendant satisfies the first step of the test, he must then establish that counsel's errors had an adverse effect upon the judgment. *Richardson v. State* (1985), Ind., 476 N.E.2d 497; *Lawrence v. State* (1984), Ind., 464 N.E.2d 1291.

Trial counsel did not submit verdict forms for the offenses of guilty of murder while committing and attempting to commit rape but mentally ill and guilty of murder while committing and attempting to commit criminal deviate conduct but mentally ill. *Schiro, supra* at 1062. Appellant contends that because the jury returned a felony murder guilty verdict on a count for which they were not supplied with a guilty but mentally ill verdict form confidence in the outcome of his trial was undermined.

This issue was raised in appellant's direct appeal in the context of trial court error in failing to supply the jury with all the necessary verdict forms. *Id.* We determined that appellant's Instruction No. 2, which informed the jury that the possible verdict of guilty but mentally ill was submitted to them on all counts of the information, sufficiently informed the jury that the mentally ill verdict "applied to Guilty of Murder/Rape and Guilty of Murder/Deviate Conduct, as well as Guilty of Murder." *Id.* at 1063. As appellant failed to show any prejudice, there was no reversible error on that issue. *Id.*

In applying the aforementioned two-step test, it is not necessary to address both components if the defendant makes an insufficient showing as to one. *Richardson, supra* at 501 (citation omitted). Because the instruction regarding the encompassing applicability of the guilty but mentally ill verdicts cured the potentially prejudicial impact of the omission of the verdict forms, appellant is unable to establish that counsel's omission had an adverse effect upon the judgment. The post-conviction court did not err in finding that appellant was not denied effective assistance of counsel.

The trial court is in all things affirmed.

PRENTICE and PIVARNIK, JJ., concur.

DeBRULER, J., dissents with separate opinion.

HUNTER, J., not participating.

DeBRULER, Justice, dissenting.

Petitioner-appellant was convicted of murder and sentenced to death. When the trial judge imposed the death sentence on October 2, 1981, he stated that he was relying in part on his personal observations of appellant's conduct in the Court's outer chambers, during the trial on the question of guilt or innocence, when the jury was not present. The trial judge had not previously disclosed to counsel for the parties that he had made those observations and that he would rely upon them in making the life or death decision. Thus, the decision itself was arrived at before counsel knew of this unique basis and had all opportunity to respond to it. This procedure does not satisfy the constitutional requirement of the due process of law.

In the aforementioned statement the judge said:

"This Court personally observed the Defendant, while the jury was present, making continual rocking motions, which did not stop throughout the trial except when the jury left the Courtroom. In the Court's outer chambers, out of the presence of the jury, in the eight days of trial, the Court frequently observed the Defendant sitting calmly and not rocking. It is apparent to the Court that this may well have influenced and misled the jury in its recommendation."

This is the justification of the judge's rejection of the jury's recommendation of life. By this revelation, the judge discloses that he deemed himself by reason of his observations, to be in a better position than the jury to make the life-death decision. I believe this was error.

In *Gardner v. Florida* (1977), 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 the sentencing judge indicated that he selected death in part because of information contained in a presentence report, which information had not been disclosed to the defendant or his counsel and to which the defendant had no opportunity to respond. The U.S. Supreme Court set the sentence aside. Here, the opportunity to respond to Judge Rosen's statement did not arise until after he had made and formally announced his decision to override the jury recommendation of life and impose death.

The standards of due process are flexible and dictated by the circumstances and competing interests involved. A hearing must be "appropriate to the nature of the case." *Mullane v. Central Hanover Tr. Co.*, (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865. It is fundamental that the right to notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo* (1965), 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62. The interests of the defendant and the state in an accurate ascertainment of facts upon which a sentence of death may be given, are at the highest level. We are bound to adopt and adhere to procedures which insure against the arbitrary deprivation of life.

In these circumstances, the opportunity to respond to the factual information supplied by the judge's private observations, came after that factual information was used and the life or death decision was reached. This opportunity was not meaningful in time. The opportunity to respond

was restricted to a request to reconsider a decision which had already been reached and publicly announced. Much judicial time and energy had already been invested in arriving at that decision. One need only compare the process of reaching a decision with the process of retreating from a decision, to appreciate the reality of the restriction resulting from the procedure employed here. In sum, to permit the personal observations of the judge, this new matter, to be swept in at the last moment, without prior notice, and to be used as a critical part of the basis for the sentencing court's decision, is contrary to my sense of fairness.